Good morning, Your Honors. My name is David Zuckman. I represent Appellant C. G. Kidd. Your Honors, this case is a little bit unusual. I met the prosecutor in this case just before this hearing, and she seems like a very nice person, but I have no choice but to go both barrels on what happened to Ms. Kidd in the District Court. What happened, only the government could think that they could get away with having a contract executed in this manner. When the government met with Ms. Kidd, they'd been investigating this conspiracy. They knew what Ms. Kidd's role was. Ms. Kidd delivered one ounce of cocaine base on one occasion. That makes her a courier. Now, we all know from case law, from experience, that couriers generally aren't very involved in the conspiracy. They generally can't cooperate against the higher-ups. It's not even worth arguing. So when the government met with Ms. Kidd and got information from her, information that put Ms. Kidd at risk, they had to know. They had to know that the information they would get would largely not be against the higher-ups in the conspiracy for two reasons. The theoretical reason, which is we know that couriers aren't terribly involved in the conspiracies in which they participate, and the second reason, that they had a C.I. in the case. Do you have any evidence that their intent was fraudulent or bad faith? In other words, it sounds to me like your argument so far is just speculation. Well, it's not. But the thing is, I don't have to prove bad faith. Were there not a plea agreement, that would be correct. If there's no plea agreement, then I have to show bad faith. But there's a plea agreement. And in California, in every plea agreement, as in every contract, there's a covenant of good faith and fair dealing. And that applies to the government. So all this talk of ---- But it's your burden, right, to show bad faith that they violated that covenant. I disagree. Because I don't have to show ---- They violated it. It's their obligation to prove that they had good faith. They have to execute the contract in good faith. And I think in this circumstance, there's no way you can call this good faith. Counsel, let me ask you. Were you the lawyer below, or did you ---- you did not execute the plea agreement. Absolutely not. I would ---- You know, the plea agreement expressly says that it's up to the government to decide whether that information is valuable. Now, you may say everybody knows that the curators are not involved in the conspiracy. But the plea agreement just says nothing in the agreement requires the USAO to accept any cooperation or assistance that the defendant may offer. And I realize she knew a lot of criminals. And she wanted to tell them about all these other criminals. But it had nothing to do with this case. And the government says, we're not interested. But they didn't say that. That's not what they said. When they first met with Ms. Kidd, prior to the plea agreement being entered, they sat there, they listened to her, they took all that information. And unless the government is saying at that time they didn't know what Ms. Kidd would offer, if they're making the position that the government was just a babe in the woods, and this Ms. Kidd might have the secret to where Osama is hiding, it just ---- it's not credible for the government to say, we went in there, who knew what Ms. Kidd would offer. This is a 10-defendant conspiracy with a confidential informant. So the only real mistake here is that the district court didn't give you an evidentiary hearing for you to show or make a substantial showing that there was in fact some evidence from which an inference could be made. No, no, that was not. The main error here was that the government induced Ms. Kidd to enter into a plea agreement, waiving substantial rights, taking information from her, putting her at substantial risk, all the while it's, I mean, I don't have any exact evidence, but the circumstances largely suggest that the government had to know that when Ms. Kidd was giving them, they were ---- Well, counsel, I assume that you're trying to shoehorn this case into De La Fuente. Isn't that essentially what we're trying to do here? That would be a shoebox I'd love to get into, absolutely. Well, I know. But getting from here to there may be a little trickier. Isn't there a significant difference between De La Fuente in this case in terms of what went on, and also, most specifically, in terms of the plea agreement itself? Well, I mean, the only thing I can tell the difference between De La Fuente in this case is that in De La Fuente, the government said, well, we don't have to make a motion to get under the statutory maximum. Even if we make our 5K recommendation, we don't have to make the motion. So the guideline range, as we interpreted in this plea agreement, is 60 months. So the defendant got the benefit of going from a 53 to 60, 51 to 63 month plea agreement range to a 60 to 63, and De La Fuente got three months off for cooperating against his cousin. In this case, Ms. Kidd got no benefit. This plea agreement is terrible from the perspective of Ms. Kidd. There is nothing that she got in this plea agreement that she would not have gotten simply by pleading straight up. And the government You got two or three point credit for acknowledgement. If she pleads straight up, she gets that. I mean, it's not the case that she just gets that from the government by pleading guilty. You'll have to, under the guidelines, cooperate with respect to your own offense and what you know about it. And there's no evidence that she did anything other than that. In fact, post arrest, she made an extensive statement. I mean, the government could have just sat down with Ms. Kidd with no agreement and said, hey, look, we'll listen to what you have to say. And then this court could say, in very good faith, the only thing we can review for is bad faith. But once the government decides, hey, we're going to reduce this to a plea agreement, they have undertaken the responsibility of executing that plea agreement, that contract, in good faith. Because Ms. Kidd is giving up substantial rights, and she's putting herself in danger. I mean, see what I mean? You seem to forget, if I may say so, counsel, that a plea agreement is a two-way street. It's not the government certainly has obligations, but there's a certain expectation and advantage that the defendant gets as well. Isn't that true? It's true, Your Honor, but it's a one-way road against a superhighway. We're talking about the United States government, the most powerful government in the history of mankind. You can't look at this as like two co-equal parties entering into this agreement, because it's just not that way. Are you saying this is an illusory contract? She got nothing, they got everything? There's no question she got nothing. There is no question she got nothing out of this agreement. Is it an illusory contract? Well, I mean, that really depends on how Your Honor's come out on the question of what the government knew or had to know going into this proffer session, because that's really what it comes down to. Do you think it would be proper to remand for an evidentiary hearing and let the district court sort it out? I think that would be a – I think that Ms. Kidd deserves the chance to have a lawyer competent to bring her claims forward before the district court. What is most distressing about this case is that before the district court imposed a statutory minimum of ten years, the first ten or twelve pages of the twenty-page sentencing transcript are devoted to upgrading the lawyer for not doing his job. And if you look at the sentencing memo, it's atrocious. There's actually a sentence in there that says, insert fact-supporting claim here. I mean, this is a ten-year case, and this guy just mailed it in. And what's happening to Ms. Kidd, I mean, she's getting it on all sides. She has a lawyer that shepherds her through without looking out for her. She gives up information. Nobody ever follows it up. Then her lawyer doesn't do a job at sentencing. I mean, this is a young woman who had one prior – No guidelines except for the substantial assistance departure, right? Sort of. She didn't get a higher guideline for conspiracy for additional acts if, for example, they could have gone to trial and shown conspiracy. This is a wheel and spoke. There's no way that she was responsible for the other folks. I mean, she's just – she's a courier. She's going out and doing And what's perhaps most distressing is that the government, in the case the Ninth Circuit has already found that the government breached a plea agreement in this particular indictment, the government argued for a role enhancement for another co-defendant. Now, my understanding of role is this. If someone's more culpable, it's relative. It's because someone's less culpable. And I challenge the government to say anyone in this case is less culpable than the one-time, one-ounce courier, Ms. Kidd. Counsel, you're down to a minute and a half. Do you want to reserve? Please. Thank you. We'll hear from the government. May it please the Court, Ilana Artin on behalf of the United States. And before I turn to the three cases that the Court has asked the parties to address, I did want to correct one factual issue. In her plea agreement, the defendant actually admitted to two different incidents, which involved a total of three ounces, or approximately 85 grams, of crack cocaine. And those three ounces, or 85 grams, are what subjected her to the 10-year mandatory minimum penalty. So that was based on her admission as part of her plea to that quantity. Now, the issue in this case, I think, is what effect the plea agreement has on the analysis that the Court makes and whether Wade applies where this plea agreement contains a cooperation provision. And I would submit that the cases that were cited in the briefs, as well as the three cases that the Court has asked the parties to address, stand for the following proposition. Where the government has limited its discretion in the plea agreement, as it did in De La Fuente, then the Court has authority to enforce that plea agreement under Santabello, and those limitations must be acknowledged. But whereas here, the plea agreement preserves the full discretion that Wade grants the government, then Wade controls. I'm sorry, Judge? Please, no. Wade gives you pretty broad discretion, but clearly there's an overlay. You can't act on illegal motivation, ethnicity, gender, race, et cetera, nor can you act in bad faith. In other words, we don't intend at all to give even a look at what this defendant has to offer. You can't act on that basis. So did you act and what is the evidence that supports or the evidence contrary that suggests that you acted in bad faith, never intending? First of all, I would agree with Your Honor's legal analysis that Wade, whether there's a plea agreement or not, still has an overlay that allows the defendant to show that the government either acted for an unconstitutional motive or for a reason that's not rationally related to any government purpose. And in addressing the evidence here, I would note that the government argued under Flores-Pion that this issue really was not properly framed in the district court, and for that reason, the factual record hasn't been developed and the evidence of bad faith for two reasons. First of all, the plea agreement in this case, unlike De La Fuente, is crystal clear. There is no ambiguity in this agreement. The agreement clearly says, first of all, that the defendant who has already given a proffer understands that there are no warranties or representations or agreements that the information that she's provided is substantial assistance. And secondly, the agreement states that whether the assistance is substantial is entirely within the discretion of the government. Let me ask you two questions. You said the record wasn't really fully developed in the lower court, and my question would be, wouldn't it be fair to remand it to develop the record? Your Honor, there's always that possibility in every case, but Wade has set up a threshold that the defendant has to meet before the government is obligated to accept, and that threshold was Let me just ask, excuse me for interrupting, but what did Kidd get out of the agreement? Well, there are a number of reasons why this agreement provides benefits to Kidd. First of all, even if you look very narrowly at the cooperation provisions, one of the purposes of these cooperation agreements is to lay out the understandings on both sides. And what the defendant gets out of it is the government's agreement not to use this information against the defendant at trial or at So the defendant always gets something out of our office's cooperation agreement because the defendant gets some promises not to use that information in certain circumstances, which wouldn't apply if there was no plea agreement. Moreover, there were a number of other benefits that the defendant got out of this agreement. The government agreed to recommend three levels for acceptance, and whether the defendant was going to get that or not, she's bargaining for the government's recommendation for that unified position, which this court has Can you make any other promise on recommendation? Well, no, but there was, for example, a stipulation to a level 32 based on the 85 grams. There was a stipulation that neither party would seek other adjustments, departures, or specific offense characteristics. So the defendant did get some benefit in terms of what the government would recommend as a sentencing guideline range. There was a limited mutual appeal waiver. So there were a number of things that the defendant got out of this plea agreement, both in terms specifically of cooperation, but in general in terms of her sentence. So I don't think it can be said that either the defendant got nothing, and certainly that it was illusory. What we have with respect to whether I'm a little curious about what the standard is in order to get an evidentiary hearing. What is the standard, and did they not meet that standard for the judge mandatorily to give a hearing? Well, I would submit that the standard that is set forth in Wade, and if Wade applies here, the standard is the one set forth in Wade, which is that the defendant has to make a substantial threshold showing, and that merely providing assistance or making generalized allegations is not sufficient, that there has to be some specific allegation. There were two Specific allegation of what? Bad faith? Of bad faith or unconstitutional motive. And there were two specific allegations that were made in this case, which the district court addressed and said, I don't find any support for them. And those two allegations were, A, that the government made some oral promise that it would make a 5K motion, and there's no support for that in the record. There was a plea colloquy at which the government, the defendant, and the prosecutor all stated that there were no other oral agreements or other agreements beside the plea agreement. And the second sort of statement was that the defendant had an expectation or understanding that the government would investigate and make a motion based on this other, you know, that she had an expectation that the government would investigate the other information that she provided. Again, that is directly contrary to the plea agreement. The pre the I may have the wrong case in mind, but was there a continuance of the sentencing with a request that the government consider the other one? There was a continuance of the sentencing, but again, this gets to because the defendant never specifically raised this claim, these facts were not developed in the district court. And it was for the purpose of the government considering or evaluating the assistance that had been given. I am not sure exactly what showing was made in requesting that. But, you know, there's an assumption on the part of the defense that it was to explore this other record. Because at the time that this defendant pled guilty and made her proffer, there were many defendants who were still going to trial, including the defendant Paige, who is the one that Kidd stipulated in her plea agreement she had dealt with. So at the time that she made her proffer and pled guilty, there was a defendant going to trial against whom she was in a position to offer testimony. I believe that is the state of the record. It is not entirely clear from the docket sheet. And that fact was not developed in the district court. But the pre-sentence report, which was prepared in, I believe it was March of 2003, so about five or six months after she pled guilty, indicates in the cover sheet that most of the defendants, including defendant Paige, were scheduled to go to trial, I believe it was like the following February. So the assumption that the only information she had related to these other defendants, I don't think that there's factual support for that in the record. And I certainly don't think that there's a showing of bad faith, because at the time that sentencing finally came around, the government said, we haven't gotten any substantial assistance because she can't help us with the defendants who are left, and we elected not to pursue her information, which we reserved the right to do specifically in the plea agreement. And this court in Awad has said that the government has no obligation to utilize its investigative resources in the manner that the defendant would like. Counsel, before your time is up, I'd like you to address the case of U.S. v. Kahn. My research leads me to believe we have no direct case on point. That's a Second Circuit case stating that the government's broad discretion does not include ignoring a defendant's cooperation simply because it's not the information the government wants to hear. How, at the time of the plea agreement and there's nothing in the plea agreement that says this, that she is to proffer information about people in this case as opposed to assisting the government in providing all sorts of information, which she did, about other cases. I don't think that the plea agreement here requires her to give information about this case. It says if the defendant provides information in the investigation or prosecution of another individual. So the government agrees that this plea agreement does contemplate either information in this case or another case. Well, the government At ER 24 Excuse me, Counsel. You have only eight seconds left, and I need to ask this question. At sentencing, the government said the kid has done nothing to help us in this case, and that's what we're looking for. How is the kid supposed to know that at the time she enters the plea agreement? That is not the entirety of what the government said. What the government said is we evaluated the other information, and we elected not to pursue it, which is within our sole discretion, and which we made clear in the plea agreement at ER 24 that nothing in this agreement requires the government or any law enforcement agency to accept any cooperation or assistance that the defendant may offer or use it in any particular way. Okay. I suggest you look at Excerpt of Records 93 as well. And that's a direct quote that I gave from Excerpt of Records 93. And that is one of the things that the prosecutor said. But the prosecutor also said we elected not to pursue the other information. So what's left is the information in this case, and she cannot and has not provided any useful assistance against the defendant's going to trial in this case, and therefore, her assistance has not been substantial in this case. That is a proper evaluation under this plea agreement. All right. Thank you, counsel. Your time has expired. Mr. Zugman. Thanks, Your Honors. Just a couple of brief points. Your Honors, we're talking about the United States government entering into a plea agreement, a plea agreement which is a contract that requires good faith. All right. What's your showing of bad faith? Your Honors, I don't need to show bad faith. That's a Wade is not a plea agreement case. When you have a plea agreement, there's a requirement that you execute it with good faith. All this discussion about bad faith and Wade is contrary to this Court's settled case law that plea agreements are contracts, and any contract in California has a covenant of good faith and fair dealing. So all of this talk about bad faith is missing the boat entirely. We accept that, but you, under normal contract law, you have the burden. Show breach. Agreed. No question about that. Don't you think I've done that? I mean, they knew this going in. There is just no way the government can make a credible claim that they thought Ms. Kidd was going to come in and make all these claims about the other defendants in the case. We know it's theoretically wrong. We know it's wrong based because they have somebody inside the organization. I mean, they didn't have to do a plea agreement. They could have said, look, we'll do a plea agreement with you for your criminal conduct, and we'll also do a 5K section. What are you relying on, on breach? Oh, the facts here are a breach. Where is the breach? The breach is this. When C.G. Kidd entered into this plea agreement, she had a right to expect that the government would deal with her in good faith. That meant that the government would evaluate her information, and if it was good, give her a 5K. If I handled this case in the district court, and she didn't get a 5K recommendation based on what she did, I would be going to the supervisor, and I would get that 5K. And I have talked to a bunch of people about this. And don't let Ms. Kidd spend this extra time in prison just because she had a bad lawyer, because that's what it ultimately is going to amount to, the fact that Mr. Dade didn't correctly articulate his position in the district court. And it's sad, and it's unfortunate, but Ms. Kidd shouldn't have to pay for it. Remanded to the district court for an evidentiary hearing on the bad faith. I guarantee you this case will go away in the right way, the way that it should. The government is not P.T. Barnum. They're not allowed just to make contracts and violate them. Thank you, counsel. The case just argued will be submitted for decision, and we will hear argument in Foster, and I believe Wynn, versus the Chase Manhattan Bank.
judges: Dw Nelson, O'scannlain, Jones